**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X     **Case No. 16-CV-9289**
DAMIEN BROWN,

                                    Plaintiff,                    **COMPLAINT**

                    -against-

                                                                 **PLAINTIFF DEMANDS**
                                                                 **A TRIAL BY JURY**

COMBINED ENERGY SERVICES, INC.,
MICHAEL TAYLOR, *In His Individual And Official Capacities,*
WALTER TAYLOR, *In His Individual And Official Capacities*,
BRYAN BABCOCK, *In His Individual And Official Capacities,*
& MEGAN REIBER, *In Her Individual And Official Capacities,*

                                    Defendants.
--------------------------------------------------------------------------------X

        Plaintiff, DAMIEN BROWN, by his attorneys, PHILLIPS & ASSOCIATES, Attorneys at

Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:


                            **NATURE OF THE CASE**

1.      Plaintiff complains pursuant to 42 U.S.C. §1981, and the New York State Human Rights

        Law, New York State Executive Law §296, *et. seq.* ("NYSHRL"), and seeks damages to

        redress the injuries Plaintiff has suffered as a result of being **Discriminated Against** on

        the basis of his **Race (Black)** and then **Retaliated Against** and **Terminated** by his

        employer for complaining of discrimination.

2.      Plaintiff brings this action charging that Defendants also **terminated his employment in**

        **retaliation for objecting** to Defendants' policy of making unlawful deductions from

        Plaintiff's wages, in violation of the New York Labor Law §193 ("NYLL").


                        **JURISDICTION AND VENUE**

3.      Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C.

§§1331 and 1343.

4.     The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

5.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred therein.

**PARTIES**

6.     That at all times relevant hereto, Plaintiff DAMIEN BROWN ("BROWN") was a resident of the State of New York and the County of Sullivan.

7.     That at all times relevant hereto, Defendant COMBINED ENERGY SERVICES, INC. ("CES") was a domestic business corporation, duly existing pursuant to, and by virtue of, the laws of the State of New York, with its principal place of business located at 216 E Broadway, Monticello, New York 12701.

8.     That at all times relevant hereto, Plaintiff BROWN was an employee of Defendant CES.

9.     That at all times relevant hereto, Defendant MICHAEL TAYLOR ("M. TAYLOR") was an employee of Defendant CES, holding the position of "Co-Owner."

10.    That at all times relevant hereto, Defendant M. TAYLOR was Plaintiff BROWN's supervisor and had supervisory authority over Plaintiff BROWN.

11.    That at all times relevant hereto, Defendant WALTER TAYLOR ("W. TAYLOR") was an employee of Defendant CES, holding the position of "Co-Owner."

12.    That at all times relevant hereto, Defendant W. TAYLOR was Plaintiff BROWN's supervisor and had supervisory authority over Plaintiff BROWN.

13.    That at all times relevant hereto, Defendant BRYAN BABCOCK ("BABCOCK") was an employee of Defendant CES, holding the position of "Dispatcher."

2

14. That at all times relevant hereto, Defendant BABCOCK was Plaintiff BROWN's supervisor and had supervisory authority over Plaintiff BROWN.

15. That at all times relevant hereto, Defendant MEGAN REIBER ("REIBER") was an employee of Defendant CES, holding the position of "Human Resources."

16. That at all times relevant hereto, Defendant REIBER was Plaintiff BROWN's supervisor and had supervisory authority over Plaintiff BROWN.

17. That at all times relevant hereto, Defendant CES, Defendant M. TAYLOR, Defendant W. TAYLOR, Defendant BABCOCK, and Defendant REIBER are collectively referred to herein as "Defendants."

## MATERIAL FACTS

18. In or around April 2007, Plaintiff BROWN began working for Clearwater Pools as a "Bulk Hazardous Materials Driver/Pool Service Tech," earning approximately $12.00 per hour.

19. In or around April 2013, Defendants bought Clearwater Pools, at which point Plaintiff BROWN became an employee of Defendants, holding the position of "Bulk Hazardous Materials Driver/Pool Service Tech," and earning approximately $16.50 per hour.

20. Upon information and belief, throughout Plaintiff BROWN's employment with Defendants, Plaintiff BROWN was an exemplary employee, was never disciplined, and always received compliments for his work performance.

21. In fact, as a result of Plaintiff BROWN's excellent work performance, Plaintiff BROWN received numerous raises in pay, ultimately earning approximately $19.50 per hour.

22. Immediately upon becoming Plaintiff BROWN's new employer, Defendants began a pattern and practice of disriminatory actions against Plaintiff BROWN solely on the basis

3

of his race and color (Black), creating an extremely hostile and intimidating work environment.

23.   Defendants then terminated Plaintiff BROWN's employment in retaliation for complaining about the racial discrimination as well as in retaliation for objecting to Defendants' policy of making unlawful deductions (and/or taking penalties) from Plaintiff BROWN's wages.

24.   In or around Fall 2013, while Plaintiff BROWN was outside in front of the garage, Robert Potenza (co-worker) came out of the building and told Plaintiff BROWN that he asked Defendant W. TAYLOR about a difficult delivery and Defendant W. TAYLOR's reply was, "**you have a slave in the truck**," referring to Plaintiff BROWN.

25.   Plaintiff BROWN was extremely upset and felt deeply disrespected and insulted. However, he did not want to jeopardize his employment and he declined to raise concerns about the racially derogatory comment.

26.   In or around Winter 2013, while Plaintiff BROWN was working the "on-call" shift, Defendants called to inform him that Christian's Greenhouse in Kerhonkson, New York ran out of propane.  Since it was around 11:30pm, Plaintiff BROWN brought his fiancé's father with him to help him stay awake.

27.   When Plaintiff BROWN arrived at the site, Kenny Atkins Jr., another employee who was already there, looked at Plaintiff BROWN and said, "**What, did you bring a nigger with you in case you get stuck?**"

28.   Plaintiff BROWN was floored that Defendants' discriminatory animus toward African Americans in the workplace would go beyond employees to include his family members as well.

4

29. On or about January 19, 2015 at around 8:20 am, as Plaintiff BROWN was walking by, Kenny Atkins Sr. (co-worker) said to John Simonsen (co-worker), "John you're alright. I don't care what Damien says about you," to which John Simonsen responded, "**I don't care what Damien says. He's black**."

30. Again, Plaintiff BROWN was utterly stunned by the unrelenting racial discrimination allowed in the workplace and his coworkers' caviler attitude toward same.

31. Then, in or around July/August 2015, Plaintiff BROWN was in the breakroom talking to Defendant M. TAYLOR and Defendant W. TAYLOR about a seatbelt ticket in Georgia that was under his name but was not his ticket.

32. During this discussion, Defendant W. TAYLOR said, "**you better watch it with Georgia. They'll hang you down there**," at which point both Defendants M and W TAYLOR proceeded to chuckle and smile. Plaintiff BROWN felt furious and helpless, as he believed that Defendant W. TAYLOR was referring to the ugly and racist history of black people being lynched or hanged in the American south.

33. On or about May 4, 2016, when Roy Warden (Pool Service Tech) saw Plaintiff BROWN eating a vanilla cupcake in the breakroom, he proceeded to point at chocolate cupcakes that were on the table and say, "**those are the ones you should be eating**." Plaintiff BROWN was disturbed and offended by this clearly racial remark.

34. The next day, on or about May 5, 2016, when Plaintiff BROWN greeted Roy Warden and Matt Koran (Pool Service Tech), Roy Warden responded and said, "**I'm glad you smiled or I wouldn't have seen you**," before walking into the tank room laughing.

35. On or about May 9, 2016, as Plaintiff BROWN, Roy Warden, Matt Koran, Danny Graham (Pool Service Tech), and Nick Frangipani (Pool Service Tech) were finishing a

5

job at Evergreen Estates, Roy Warden turned to Plaintiff BROWN and said, "**you should ride with me tomorrow - I may need a black chauffer**."   Plaintiff BROWN was embarrassed, humiliated, and angered as a result of this comment.

36.    On or about July 21, 2016, Defendants asked all of their employees to sign a document acknowledging and agreeing with the following statement: "If a delivery is made to the wrong location and we cannot recoup the monies from the party that it was made to we will have no choice but to hold you responsible for the mis-delivery.  The same is true for overfilling of tanks.  If a customer requests a minimum delivery and we deliver more than they requested and they refuse to pay the difference, you will be held responsible for the balance."

37.    Plaintiff BROWN understood this to mean that if Defendants felt that Plaintiff BROWN had made a mistake, Defendants would be able to deduct (penalize) the "value" of this alleged mistake from his wages.

38.    Feeling uneasy about agreeing to this unlimited wage deduction/penalty, Plaintiff BROWN immediately called the New York State Department of Labor ("NYSDOL") who informed Plaintiff BROWN that deducting wages from his paycheck would violate the New York State Labor Law ("NYLL")and advised him not to sign it. As such, Plaintiff BROWN did not sign the document.

39.    Realizing that Plaintiff never signed the acknowledgment, on or about July 26, 2016, Lisa Hummel (Head Secretary) and Defendant BABCOCK asked Plaintiff BROWN to sign the same document. Plaintiff, again, refused to agree to the penalty as per the advice of the NYSDOL.

40.    Immediately thereafter, Plaintiff BROWN also informed Defendant M. TAYLOR that he

6

could not sign the document because the policy and/or penalty that Defendants were trying to implement was illegal pursuant to *NYLL* §193.

41. Plaintiff also informed Defendant M. TAYLOR that Plaintiff was given this information when he inquired with the NYSDOL.

42. In response, Defendant M. TAYLOR became very angry and asked Plaintiff BROWN, "Why are you talking to the Department of Labor?  Who's going to pay for these missed deliveries.  Well, you're going to sign something."

43. Then, later that same day, when Plaintiff BROWN returned from his delivery route, he discovered an envelope with his name on it that Defendants had left for him with a revised policy that stated in part, "Not following these procedures, making mis-deliveries or overfilling tanks could lead to you being suspended, suspended without pay or terminated."

44. On this notice, Defendants made a notation on the bottom stating, **"Damien, I made this up special for you."** In this regard, Plaintiff was singled-out and subjected to a different set of rules and penalties than his similarly-situated coworkers.

45. Defendants also attached a copy of the August 2016 "on-call" schedule to this notice which had Plaintiff BROWN working the "on-call" shift on August 14, 2016.

46. It was clear to Plaintiff BROWN that Defendants only scheduled him for this "on-call" shift in retaliation for complaining about Defendants' violation of the NYLL, as well for his complaints of discrimination that were made days prior, because Defendants had never before scheduled Plaintiff BROWN to work the "on-call" shift in August throughout his entire employment.

47. Defendants scheduled Plaintiff BROWN to work an August "on-call" shift only hours

7

after Plaintiff BROWN objected to this wage deduction/penalty policy for the first time.

48. On or about July 28, 2016, Plaintiff BROWN notified Defendant BABCOCK and Defendant M. TAYLOR that he was unable to work the "on-call" shift on August 14, 2016 due to his inability to park his truck at his house overnight.

49. In response, Defendant BABCOCK told Plaintiff BROWN to ask his coworkers if anyone would be willing to cover Plaintiff BROWN's August 14th shift for him.

50. However, Plaintiff BROWN was unable to find anyone, and as such, later that same day, he notified Defendant BABCOCK that he was unable to find anyone to take his shift. In response, Defendant BABCOCK replied that Plaintiff BROWN would then have to work the August 14th "on-call" shift.

51. On or around July 29, 2016, Plaintiff BROWN learned that two (2) coworkers, Jamie Defrank (Secretary) and Tennessee Gerow (Secretary), were in the breakroom continuously using the N-word while in front of other employees/witnesses.

52. At the time, there were only two (2) African American employees at CES – including Plaintiff. The other African American employee, who was made aware of the racially derogatory comments, was crying and/or was visually upset. Plaintiff BROWN was uncomfortable and upset as well.

53. Extremely upset and hurt by this blatant ongoing discriminatory work environment, on or about August 1, 2016, Plaintiff BROWN decided to formally complain to Defendant REIBER about the constant racial harassment to which he had been subjected for the last three years.

54. While Plaintiff BROWN was hoping that this complaint would finally put an end to the constant racial harassment, he never expected Defendants to further retaliate against him

for making his complaint.  However, this is exactly what occurred.

55.    The following day, on or about August 2, 2016, Plaintiff BROWN met with Defendant REIBER and Defendant M. TAYLOR, during which Defendant M. TAYLOR asked, "*Damien, what am I supposed to do with this? This company has never gone through this.  You are a big strong guy and [Roy Warden]'s a little old man. You grew up in this country so you should know how these hillbillies are. I don't know what to do with hearsay.*"

56.    In disgust, Defendant M. TAYLOR said, *"to all people these now we have talk to."*

57.    Upon information and belief, DEFENDANT CES has a zero-tolerance written policy that forbids discrimination and retaliation in the workplace.

58.    Despite this policy, Defendants M TAYLOR and MEGAN REIBER refused to investigate and/or take action to cease the unlawful discriminatory conduct and hostile work environment against Plaintiff. Instead, they made it known to Plaintiff that his complaint was an inconvenience and attempted to thwart Plaintiff's attempts to have his complaint investigated.

59.    On or about August 4, 2016, Plaintiff BROWN again told Defendant BABCOCK that he was unable to find someone to cover his shift and asked if Defendant BABCOCK could help, to which Defendant BABCOCK wholly refused.

60.    Then, less than two (2) weeks later, on or about August 15, 2016, Defendants suddenly terminated Plaintiff BROWN's employment because of "your refusal to participate in the company's on-call schedule. Your supervisor, [Defendant BABCOCK], posted the August on-call schedule on July 27th to which you responded that you would not participate in being "on-call."  [Defendant BABCOCK] reminded you that being on-call

is a condition of employment for all drivers and reminded you that if for any reason you were unable to work this on-call shift, it would be your responsibility to find coverage by asking all of your fellow employees.  After failing to find coverage for your on-call shift on August 14, 2016 and refusing to respond to an on-call delivery leaving a summer camp housing approx. 200 children without hot water, we saw no other option than to terminate your employment. We rely on our employees to help us offer dependable service to our customers."

61.    This reason for termination was clearly **<u>pretextual</u>**, as Defendants knew that Plaintiff BROWN was unable to work the August 14th "on-call" shift and only scheduled him for this shift as a way to set him up for termination in retaliation for objecting to Defendants' violation of the NYLL.

62.    Furthermore, while Defendants had helped some of Plaintiff BROWN's similarly situated coworkers find replacements for their scheduled shifts in the past, once Plaintiff BROWN complained of the racial discrimination, Defendants made the decision to force Plaintiff BROWN to work the shift and then terminate his employment for not being able to do so.

63.    This termination was especially suspect because Plaintiff BROWN was the person who was complaining that he was the victim of racial discrimination, and he was also the one who was terminated soon after complaining of discrimination.

64.    Based upon Defendants' aforementioned discriminatory actions, and the close temporal proximity between PLAINTIFF'S complaints and his termination, it is clear that on or about August 15, 2016, Defendants terminated Plaintiff BROWN's employment in retaliation for objecting to Defendants' NYLL violations as well as in retaliation for complaining of racial discrimination and harassment in the workplace.

10

65. Plaintiff BROWN was offended, disturbed, and humiliated by the blatantly unlawful and retaliatory termination.

66. The above are just some of the acts of harassment, discrimination and retaliation that Plaintiff BROWN experienced on a regular and continual basis while employed by Defendants.

67. But for the fact that Plaintiff BROWN complained about Defendants' NYLL violations and racial harassment, Defendants would not have retaliated against him and terminated his employment.

68. Defendants' actions and conduct were intentional and intended to harm Plaintiff BROWN.

69. Plaintiff BROWN has been unlawfully discriminated against, retaliated against, humiliated, degraded and belittled, and as a result, suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

70. Plaintiff BROWN's performance was, upon information and belief, above average during the course of his employment with Defendants.

71. As a result of Defendants' actions, Plaintiff BROWN feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

72. As a result of the acts and conduct complained of herein, Plaintiff BROWN has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff BROWN has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

73. Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law. As such, Plaintiff BROWN demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER *42 U.S.C.* § 1981 *(As Amended)*

74. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

75. *42 U.S.C.* § 1981 states in relevant part as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. §1981

76. Plaintiff, who is Black, was discriminated against because of his race/color as provided under *42 U.S.C.* § 1981 and has suffered damages as set forth herein.

77. Plaintiff was effectively denied full and equal benefit of all laws and proceedings as an employee of Defendant COMBINED ENERGY SERVICES.

78. Plaintiff was subjected to ongoing and systematic acts of unlawful discrimination and retaliation at CES by his supervisor DEFENDANT W. TAYLOR, as well as other coworkers, in the presence of and/or with the knowledge of DEFENDANT M. TAYLOR

79. Plaintiff was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory

12

racially-motivated language against African American employees.

80. Once Plaintiff complained to DEFENDANT MEGAN REIBER of the discriminatory abuse he faced at the hands of his direct supervisors DEFENDANTS W AND M TAYLOR, as well as his coworkers, Plaintiff was further subjected to: an ongoing and continuous pattern of harassment, abuse, increased verbal abuse, physical harassment, increased racially discriminatory remarks and ridicule and/or was otherwise further subjected to a hostile working environment.

81. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DFENDANT CES.

82. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER *42 U.S.C.* §1981 (*As Amended*)

83. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

84. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

85. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

86. Plaintiff was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against African American employees.

13

87. Once Plaintiff complained to Defendant MEGAN REIBER about discriminatory abuse he faced at the hands of his direct supervisor DEFENDANTS W AND M TAYLOR, as well as by his coworkers, Plaintiff was further subjected to: an ongoing and continuous pattern of harassment, abuse, increased verbal abuse, physical harassment, increased racially discriminatory remarks and ridicule and/or was otherwise further subjected to a hostile working environment.

88. Defendants M TAYLOR and MEGAN REIBER refused to investigate and/or take action to cease the unlawful discriminatory conduct and hostile work environment agaisnt Plaintiff. Instead, they made it known to Plaintiff that his complaint was an inconvenience and attempted to thwart Plaintiff's attempts to have his complaint investigated.

89. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DFENDANT CES.

90. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

91. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER NEW YORK STATE EXECUTIVE LAW

92. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

93.   New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

94.   Defendants have engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his race/color.

95.   Plaintiff was subjected to ongoing and systematic acts of unlawful discrimination and retaliation at CES by his supervisor DEFENDANT W. TAYLOR, as well as other coworkers, in the presence of and/or with the knowledge of DEFENDANT M. TAYLOR

96.   Plaintiff was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against African American employees.

97.   As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

**AS A FORTH CAUSE OF ACTION FOR RETALIATION
UNDER NEW YORK STATE EXECUTIVE LAW**

98.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

99.   New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any

15

practices forbidden under this article."

100. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

101. Plaintiff was subjected to ongoing and systematic acts of unlawful discrimination and retaliation at CES by his supervisor DEFENDANT W. TAYLOR, as well as other coworkers, in the presence of and/or with the knowledge of DEFENDANT M. TAYLOR

102. Plaintiff was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against African American employees.

103. Once Plaintiff complained to DEFENDANT MEGAN REIBER of the discriminatory abuse he faced at the hands of his direct supervisors DEFENDANTS W AND M TAYLOR, as well as his coworkers, Plaintiff was further subjected to: an ongoing and continuous pattern of harassment, abuse, increased verbal abuse, physical harassment, increased racially discriminatory remarks and ridicule and/or was otherwise further subjected to a hostile working environment.

104. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DFENDANT CES.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW ("Aider And Abettor" Liability Against Individual Defendants)

105. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

16

106. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

107. Individual Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

108. Plaintiff was subjected to ongoing and systematic acts of unlawful discrimination and retaliation at CES by his supervisor DEFENDANT W. TAYLOR, as well as other coworkers, in the presence of and/or with the knowledge of DEFENDANT M. TAYLOR

109. Plaintiff was subjected to a hostile work environment and/or a workplace that was permeated with racial bias, racially-motivated insults, racial animus, and derogatory racially-motivated language against African American employees.

110. Once Plaintiff complained to DEFENDANT MEGAN REIBER of the discriminatory abuse he faced at the hands of his direct supervisors DEFENDANTS W AND M TAYLOR, as well as his coworkers, Plaintiff was further subjected to: an ongoing and continuous pattern of harassment, abuse, increased verbal abuse, physical harassment, increased racially discriminatory remarks and ridicule and/or was otherwise further subjected to a hostile working environment.

111. PLAINTIFF was then wrongfully terminated in retaliation for engaging in the above-describe protected activity and for seeking equal treatment under the laws of the State as well as under the laws, rules, procedures, manuals, and promises of DFENDANT CES.

112. Individual Defendants herein are each liable for aiding and abetting the discriminatory and/or retaliatory conduct about which Plaintiff complains herein.

17

**AS AN SIXTH CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK LABOR LAW**
**RETALIATION**

113.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

114.   Plaintiff made complaints to COLLECTIVE DEFENDANTS about practices that violate the NYLL, including but not limited to, Defendants' unlawful deductions from Plaintiff's wages, in violation of NYLL §193.

115.   After receiving these complaints, Defendants retaliated against Plaintiff by singling-out Plaintiff, subjecting Plaintiff to adverse employment actions, harassing Plaintiff and terminating his employment.

116.   By retaliating against Plaintiff for his complaints about violations of the New York Labor Law, Defendants violated New York Labor Law §215, which states that, "No employer ... shall discharge, penalize, or in any other manner discriminate against an employee because such employee has made a complaint to his employer ... that employer has violated any provision of [the Labor Law]."

117.   Due to Defendants' violation of New York Labor Law §215, Plaintiff is entitled to recover all appropriate legal and equitable relief, including but not limited to, compensatory damages, liquidated damages, attorneys' fees and costs.

**JURY DEMAND**

118.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

   A.   Declaring that Defendants engaged in unlawful employment practices prohibited by 42

18

U.S.C. §1981, Title VII, the NYCHRL, and the NYLL in that Defendants <u>discriminated</u>

<u>against</u> Plaintiff on the basis of his race and <u>retaliated against</u> Plaintiff for complaining

of discrimination and objecting to Defendants' unlawful wage deductions;

B.  Awarding damages to Plaintiff for all lost wages and benefits resulting from

Defendants' unlawful discrimination and retaliation and to otherwise make him whole

for any losses suffered as a result of such unlawful employment practices;

C.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

distress, pain and suffering and injury to his reputation in an amount to be proven;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of

the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just

and proper to remedy Defendants' unlawful employment practices.

Dated:  New York, New York
        December 1, 2016

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:    _____

Gregory Calliste, Jr, (GC8140)
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431

19